Box *v.* State

No. 40113          May 7, 1956          87 So. 2d 86

*Jessie M. Byrd,* Leakesville; *Ben Stevens,* Hattiesburg; *L. Barrett Jones,* Jackson, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

McGehee, C. J.

The appellant, Armal Box, a Negro woman, was indicted for the alleged murder of her husband, Harry Box. She was convicted of manslaughter through culpable negligence and sentenced to serve a term of seven years in the state penitentiary. From that conviction

and sentence she prosecutes this appeal, and assigns several grounds of alleged error.

There is no dispute in the testimony, and it shows that the appellant operated a cafe, and that her husband was cut with a paring knife just behind the left collarbone and about midway thereof, and that the knife wound was about three or four inches deep. The wound was inflicted at sometime between one and two o'clock in the afternoon, and the victim was carried to a doctor's office at 5:15 that afternoon, and died within about five minutes after he got to the doctor's office. No one claims to have seen the appellant inflict the wound.

The first witness for the State testified that when he arrived at the cafe at about one or two o'clock in the afternoon he saw four men and the appellant in the cafe, and saw blood on the clothes of the deceased near where the knife wound was inflicted. The next witness testified that he arrived at the cafe "around a quarter of two or two o'clock" that afternoon and that he saw Harry Box lying on the floor and that he had blood about his chest. The next witness didn't know anything about the case, but merely testified that he was at the cafe during the forenoon and didn't notice anything wrong between the appellant and her husband. The next witness, Dr. McCleod, testified about the wound, about the victim dying in his office, and he was of the opinion that if the patient had received immediate medical attention after the wound, he would probably not have died.

.It is not shown who the men were that were in the cafe upon the arrival of the first witness at the scene, but it is undisputed that the victim of the knife wound made no complaint to anyone about his wife having cut him, if she did do so; and it is also undisputed that none of the persons who had seen him from the time he was cut until he was carried to the doctor's office, had thought that he was seriously hurt. There was some testimony about whether or not he was drunk.

Nor did the appellant make statement to anyone as to the circumstances under which her husband got cut with the knife at any time before he was carried to the doctor's office. But the constable who arrived at the scene near 6:00 P.M., testified about having found a paring knife in the back of the cafe on the floor, and he was asked: "Q. And she told you that was the weapon? A. Well, Doll (meaning the appellant) showed it to me. Q. She showed it to you? A. Yes, sir, she told me that they had the knife." It will be noted that this testimony does not disclose who she meant by "they".

It was shown that there was a telephone in the cafe, and that the constable was asked whether or not the appellant was interrogated about why she did not call the law or summon a doctor, or send him to a doctor until about three hours after the cutting. The constable's reply was: "She said she didn't think he was hurt bad enough." On further questioning, the officer said that Armal Box told him, when being questioned about how her husband received the knife wound, that "they must have done it through a struggle over the knife." It will be again noted that she did not clearly state who had been engaged in the struggle over the knife.

The foregoing is all the material evidence in the case. But assuming that the appellant meant that her husband must have got cut at a time when she and her husband were engaged in a struggle over the knife, it is still not shown whether the knife was in his hand or hers during the struggle. In other words, there is no proof as to what either the husband or wife was doing at the time he got cut. She was not placed on the witness stand to testify in her own behalf.

We are of the opinion that the proof was insufficient to warrant her conviction of manslaughter through culpable negligence, there being no proof to show beyond every reasonable doubt that she was guilty of any negligence in connection with the struggle over

the knife which resulted in her husband sustaining the knife wound. Therefore, she should not be required to serve a sentence of seven years in the state penitentiary on this unsatisfactory state of proof. The request for a directed verdict in her behalf on this testimony should have been sustained.

Reversed, and judgment here for the appellant.

*Hall, Lee, Kyle* and *Holmes, JJ.,* concur.